IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KEISHA HUDSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 20-1487 |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(6) and 12(b)(1)**

BROWN MCGARRY NIMEROFF LLC
Mary Kay Brown, Esquire
Raymond McGarry, Esquire
Jami B. Nimeroff, Esquire
2 Penn Center, Suite 610
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
T:  (267) 861-5330

*Attorneys for Defendant*

Dated:  May 18, 2020

## **TABLE OF CONTENTS**

I.      BACKGROUND ................................................................................................ 1

II.     ARGUMENT .................................................................................................... 1

   A.   Standard on a 12(b)(6) Motion ................................................................... 1

   B.   Counts I and II of Plaintiff's Complaint for First Amendment Retaliation Should be
        Dismissed with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). .................. 3

      1.   The Speech At-Issue is Not Speech of Plaintiff Keisha Hudson ................................. 5

      2.   The Speech At-Issue is not Citizen Speech ..................................................... 6

         a.   The Brief was Prepared by the OPD as a part of its Professional Duties ................. 7

         b.   The Brief Was Prepared By the OPD Using Its Specialized Knowledge ..................... 9

   C.   Count III of Plaintiff's Complaint for Wrongful Discharge Should be Dismissed with
        Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6). ................................................ 10

      1.   Count III is Barred by the Pennsylvania Political Subdivision Tort Claims Act ........ 10

      2.   Count III Does Not State a Valid Claim for Relief Since it  Does Not Set Forth a
           Clearly Defined Public Policy. .......................................................... 13

   D.   Plaintiff's Request To Be Reinstated With a Guaranty that She May Operate
        Independently Must Be Stricken ........................................................... 16

   E.   The Court Should Refrain From Exercising its Supplemental Jurisdiction ..................... 17

III.    CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................ 1

*Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973) .............. 11

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007) ............................................................. 1, 2

*Clark v. Modern Grp. Ltd.,* 9 F.3d 321 (3d Cir. 1993) ................................................................ 14

*Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1988)..................... 13

*DeMuro v. Philadelphia Housing Authority*, No. 98-3137 1998 WL 962103 (E.D. Pa.
  Dec. 22, 1998)...................................................................................................................... 12

*DeSimone v. Coatesville Area School District*, 248 F.Supp.2d 387 (E.D. Pa. 2003).................. 12

*Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979 (3d Cir. 2014) .................................... 3

*Field v. Phila. Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170 (1989) .......................................... 14

*Finn v. City of Philadelphia,* 541 Pa. 596, 664 A.2d 1342 (1995) .............................................. 11

*Foraker v. Chaffinch,* 501 F.3d 231 (3d Cir. 2007)................................................................... 4, 5

*Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107 (3d Cir.2003) ................................................ 15

*Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231 (3d Cir. 2016)................. 4

*Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).................. 3, 4, 5, 7

*Goldinger v. County of Butler*, No. 89-632, 1990 WL 309411 (Pa. Com. Pl.
  September 6, 1990) ............................................................................................................... 12

*Gorum v. Sessoms,* 561 F.3d 179 (3d Cir. 2009) ........................................................................ 5

*Greenwood Partners, L.P. v. Cimnet, Inc.*, 2003 WL 22238981 (E.D.Pa. Sept. 2003) .............. 17

*Growth Horizons, Inc. v. Delaware Cty., Pa.,* 983 F.2d 1277 (3d Cir. 1993) ............................. 17

*Haiden v. Greene Cty. Career and Tech. Ctr.,* No. 08–1481, 2009 WL 2341922 (W.D.Pa.
  July 27, 2009)....................................................................................................................... 12

*Hennessy v. Santiago,* 708 A.2d 1269, 1273 (Pa.Super. 1998) .......................................... 15, 16

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ........................................................ 3

*Hunger v. Grand Central Sanitation*, 670 A.2d 173 (Pa. Super. 1996)..................................... 14

*Katzenmoyer v. City of Reading,* 158 F. Supp 2d 491 (E.D. Pa. 2001) ...................................... 12

*Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1994) ................................ 11

*Kroen v. Bedway Security Agency*, 633 A.2d 628 (Pa. Super. 1993) .......................................... 14

*Lancine v. Giles,* 132 Pa.Cmwlth. 255, 572 A.2d 827 (Pa. Commw. Ct.  1990) ....................... 12

*Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987)......................................... 11

*McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283 (2000) ................ 13

*McNichols v. Commonwealth, Dep't. Of Transportation,* 804 A.2d 1264, 1267
  (Pa. Commw. Ct. 2002) ....................................................................................................... 12

*Munroe v. Central Bucks School Dist.*, 805 F.3d 454 (3d Cir. 2015)............................................ 3

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir. 1993) .................. 2

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)........................................................ 2

*Plaza v. Herbert, Rowland & Grubic, Inc.*, No. 344 C.D. 2016, 2017 WL 519827
  (Pa. Commw. Ct. Jan. 30, 2017)........................................................................................... 12

*Polite v. Rendell*, 2010 WL 1254334 (E.D. Pa. Apr. 1, 2010)..................................................... 18

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002) ........................................ 2

*Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) ............................ 3

*Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. 1977) ....................................... 14

*Rooney v. City of Phila.*, 623 F.Supp.2d 644 (E.D. Pa. 2009)..................................................... 12

*Rothrock v. Rothrock Motor Sales, Inc.*, 810 A.2d 114 (Pa. Super. 2002)............................ 13, 17

*Sands v. McCormick*, 502 F.3d 263 (3d Cir.2007) ............................................................ 2

*Shick v. Shirey,* 716 A.2d 1231 (Pa. 1998) ...................................................... 14, 15, 16

*Snavely v. Arnold*, No. 08–2165, 2009 WL 1743737 (M.D. Pa. June 18, 2009)........................ 12

*Swift v. Department of Transportation*, 937 A.2d 1162 (Pa. Cmwlth. 2007)............................ 12

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) . 18

*Weaver v. Harpster,* 601 Pa. 488, 975 A.2d 555 (2009).............................................. 14

*Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699 (3d Cir. 1988) ................................ 13

**Statutes**

16 P.S. §9960.1 *et seq.* ............................................................................. 17

23 P.S. § 6311 ..................................................................................... 16

42 Pa.C.S. § 8541-8564 ........................................................................ 11, 12

28 U.S.C. § 1367................................................................................ 17

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................... 1, 18

Fed. R. Civ. P. 12(b)(6)......................................................................... 1, 3, 10

Defendant Montgomery County (the "County"), pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, files the within Motion to Dismiss Plaintiff's Complaint, and in support thereof, states as follows.

I.   **BACKGROUND**

Plaintiff Keisha Hudson ("Plaintiff" or "Hudson") filed this lawsuit against the County seeking damages in connection with the termination of her employment with Montgomery County as the Deputy Chief Public Defender. Plaintiff contends that she was fired in retaliation for the filing by the Montgomery County Office of Public Defender ("OPD") of an Amicus Curiae Brief (the "Brief") with the Pennsylvania Supreme Court on issues related to the bail practices of the courts located within Montgomery County and throughout the Commonwealth. The Complaint alleges causes of action for First Amendment Retaliation (Counts I and II) and for Wrongful Discharge in Violation of Public Policy (Count III). For the reasons set forth below, Plaintiff's claims must be dismissed with prejudice.

II.   **ARGUMENT**

A.   **Standard on a 12(b)(6) Motion**

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action may be dismissed when the complaint fails to state a claim upon which relief can be granted.  To survive such a motion, the complaint must meet two criteria: (1) it must assert a plausible claim; and (2) it must set forth sufficient factual allegations to support the claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1941, 173 L. Ed. 2d 868 (2009)  (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Neither a "formulaic recitation of the elements of a cause of action nor naked assertions of fact devoid of further factual enhancement" is sufficient to withstand dismissal.  *Id*.  To satisfy the *Twombly* and *Iqbal* standard, "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Id*. (*citing Twombly*, 550 U.S. at 570). A claim has facial plausibility when enough factual content is plead that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id*. (*citing Twombly*, 550 U.S. at 556). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. In addition, those facts constituting more than mere conclusions, and thus assumed true, must also "plausibly suggest an entitlement to relief." *Id*. at 1951. The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint and that justifies "moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). Therefore, the Court may consider the Amicus Brief, attached hereto as Exhibit "A," because Counts I and II of the Complaint are based precisely on what is stated in the Brief, who made those statements and the fact that it was filed with the Pennsylvania Supreme Court.

**B.**   **Counts I and II of Plaintiff's Complaint for First Amendment Retaliation Should be Dismissed with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).**

To establish a First Amendment retaliation claim, "a public employee must show that (1) his activity is protected by the First Amendment and (2) the activity was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the activity had not occurred." *Munroe v. Central Bucks School Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) (*quoting Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014)).

With respect to the first element, a public employee's speech is protected by the First Amendment when: (1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (*quoting Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)). A public employee does **not** speak "as [a] citizen" when he makes a statement "pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Rankin v. McPherson*, 483 U.S. 378, 384–85, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (*quoting Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

In *Garcetti,* the Supreme Court described this inquiry as "a practical one," noting that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the

3

employee's professional duties for First Amendment purposes." *Id.* at 424–25, 126 S.Ct. 1951. Put another way, the First Amendment does not shield the consequences of "expressions employees make pursuant to their professional duties." *Id.* at 426, 126 S.Ct. 1951.

Following *Garcetti*, the Third Circuit Court of Appeals held that an employee does not speak as a citizen if the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee. For example, police officers do not speak as citizens when they object to police department policies by means of "police department counseling forms," as "[c]itizens do not complete internal police counseling forms." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 243-44 (3d Cir. 2016).

The Third Circuit Court of Appeals has further held that a public employee's speech does not constitute citizen speech if the activity or speech performed is within the "scope of their routine operations." *See Foraker v. Chaffinch,* 501 F.3d 231, 241–42 (3d Cir. 2007). In *Foraker,* three State Police firearms instructors complained to their superiors about intolerable conditions at the firing range.  The HVAC system did not work properly, the bullet trap was malfunctioning, and officers and students at the range were suffering contamination effects, including elevated levels of heavy metals in their blood. *Id.* at 233. The officers complained up the chain of command and also met with the State Auditor investigating the facility. After this meeting, the officers' attorney read the statements they had made to the Auditor, verbatim, to the media. *Foraker,* 501 F.3d at 233. In affirming the grant of judgment as a matter of law to the Defendants, the court analyzed *Garcetti* and held that the officers' complaints to supervisors were made pursuant to their official duties because the issues they complained of related to their day-to-day employment responsibilities:

> [The officers] were acting within their job duties when they expressed their concerns up the chain of command because they needed to have a functioning bullet

> trap to conduct their educational programs and it was their special knowledge and
> experience with the bullet trap that demonstrated their responsibility for ensuring
> its functionality by reporting problems to their superiors.

*Id.* at 240. The court noted that "[t]he special knowledge and experience referenced here is their

daily interaction with the equipment, which puts them in the position to know when problems

arose." *Id.* at 204 n. 6.

In *Gorum v. Sessoms,* 561 F.3d 179 (3d Cir. 2009), the Third Circuit Court of Appeals

further refined its *Foraker* analysis. In *Gorum*, a tenured faculty member of a state university

argued that he was dismissed in retaliation for advising an All–American football player in

connection with a disciplinary hearing for violating the school's weapons possession policy, and

for disinviting the school's President to speak at a prayer breakfast. The court rejected plaintiff's

argument that, because he went above and beyond his specified job responsibilities, he was

speaking as citizen rather than as an employee. Relying on its decision in *Foraker,* the court

found that it was "Gorum's special knowledge of, and experienced with" the school's

disciplinary code that gave him the opportunity to speak on the student's behalf, and it was his

position as faculty advisory to the fraternity that allowed him to rescind the President's invitation

to speak. *Gorum,* 561 F.3d at 186. In reaching this conclusion, the court relied on the Supreme

Court's direction in *Garcetti* that the "proper inquiry" into an individual's official duties "is a

practical one." *Id.* at 185 (*quoting Garcetti,* 547 U.S. at 424).

### 1.    The Speech At-Issue is Not Speech of Plaintiff Keisha Hudson

In this case, Plaintiff alleges that the Amicus Brief constitutes her expression of free

speech. (ECF #1, Complaint ¶¶ 116-118). Yet, as Plaintiff readily admits, the Brief was not filed

by or on behalf of Plaintiff; but rather, on behalf of the OPD. (ECF #1, Complaint ¶ 32). More

precisely, the Brief was filed on behalf of the OPD by Lee Awbrey, Chief of Appeals, Office of

the Public Defender. Plaintiff admits she did not draft the Brief, did not file the Brief and is not

5

even a signatory to the Brief. (ECF #1, Complaint, ¶¶ 31, 116; Ex. A, Brief, p. 20). The
introduction to the Brief leaves no doubt as to whose interest is being advanced: "[t]he
Montgomery County Office of the Public Defender represents indigent individuals facing
criminal charges in all stages of their proceedings.  Our office has a substantial interest in this
matter."  (Ex. A, Brief, p. 1). Thus, Plaintiff has no standing to seek the protections of the First
Amendment for speech that factually is not even **her** speech. Thus, in addition to dismissal
pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's Complaint must be
dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "Under Fed.R.Civ.P.
12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a
claim. "A motion to dismiss for want of standing is ... properly brought pursuant to Rule
12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp.
Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (*citing Ballentine v.
United States*, 486 F.3d 806, 810 (3d Cir. 2007)).

## 2.      The Speech At-Issue is not Citizen Speech

Plaintiff alleges that the Amicus Brief constitutes her expression of free speech. (ECF
#1, Complaint, ¶¶116-118).  According to the Complaint and the Brief, the Brief:

- was not prepared by Plaintiff, but rather was prepared by the staff of the
  Montgomery County Public Defenders' Office at the direction of Plaintiff,
  specifically by the Chief of Appeals, Lee Awbrey (ECF #1, Complaint, ¶¶31 and
  116);

- outlines the practices of the courts in Montgomery County and discusses specific
  cases handled by the OPD, as examples to support the arguments in the brief. (ECF
  #1, Complaint, ¶25; Ex. A, *Brief*, generally);

- was filed by the OPD, and not Plaintiff (ECF #1, Complaint, ¶116 and Ex. A, *Brief*, p. 1) ("Amicus Curiae **Brief of The Montgomery County Office of The Public Defender** In Support Of Petitioners");

- was signed by Lee Awbrey, Chief of Appeals for the OPD, and not Plaintiff (Ex. A, Brief, p. 20);

- was filed because the OPD determined that it had a "substantial interest in the matter" because the OPD "represents indigent individuals facing criminal charges at all stages of their proceedings." (Ex. A., Brief p. 1);

- was filed because the OPD determined that it had "a direct interest in the petition for judicial intervention that seeks to curb improper and excessive bail determinations, increase accountability, promote uniform practices amongst the counties, and fortify Pennsylvania's existing law." (Ex. A., Brief p. 1).

- was not the first Amicus Brief ever filed by the OPD.  In fact, the OPD had recently filed other Amicus Curiae briefs on issues surrounding the imposition of fees and fines on criminal defendants. (ECF #1, Complaint, ¶¶ 26 and 29; Ex. B., Docket Entries).

Given those undisputed facts, the Brief was undeniably prepared for and submitted by the OPD for the benefit of its indigent clients. As such, under no circumstances could the Brief constitute "citizen speech" of Plaintiff as defined by the United States Supreme Court in *Garcetti* and binding caselaw developed in the wake of that decision.

> *a.  The Brief was Prepared by the OPD as a part of its Professional Duties*

Plaintiff alleges that the filing of the Brief was not a part of her "ordinary job duties at the Office." (ECF #1, Complaint, ¶117).  This allegation, however, belies the facts set forth in the Brief and contradicts allegations contained in the Complaint.

There is no question that the ordinary job duties of a public defender include advocating on behalf of the indigent defendants in their County.  Here, that is exactly what the OPD did when it made the decision to file this Brief.  In fact, the OPD confirmed as much in the Brief itself.  The OPD made a representation to the Supreme Court of Pennsylvania that it had a "direct interest" in the litigation and that the bail practices at issue "affects our clients".  (Ex. A., Brief p. 1).  The Brief reiterates that "[o]ur office has a substantial interest in this matter."   On its face, the Brief makes clear, that this is not the speech of Plaintiff as a citizen, but rather, the speech of the OPD on behalf of its clients.  The fact that it advanced the interests of many of the OPD's clients - as opposed to a single client - is of no import in the analysis of whether the Brief constitutes "citizen speech."

Moreover, Plaintiff concedes in her Complaint that the OPD has, as a practice, filed amicus briefs in the past.  Specifically, in paragraphs 26 and 29 of the Complaint, Plaintiff concedes that 'the Office's prior amicus briefs…" and "Beer had never before sent a copy of an amicus brief to Soltysiak, Stein, or anyone else in the County administration."  In fact, in the 12 months prior to the filing of the Brief relevant to this matter, the OPD participated as an amicus in two other cases.  (See the publicly available docket entries attached as Exhibit "B" hereto). This makes it clear that the filing of amicus briefs is not outside the scope of the OPD's course of conduct in advancing the interests of its indigent clients. As such, the filing of an amicus brief by the OPD cannot be considered "citizen speech" of the Plaintiff, especially where here, the Plaintiff did not even participate in the drafting of the Brief, nor did she sign the Brief.

Moreover, Plaintiff concedes that the Brief was filed in connection with her official duties in Count III of the Complaint where she asserts that the County improperly interfered with

the independence of the OPD by terminating her employment purportedly in retaliation for filing

the Brief. Specifically, Plaintiff alleges that:

> Firing Hudson for presenting arguments to the Supreme Court of Pennsylvania, in
> interference with the independence of the Office, is repugnant to the public policy
> of the Commonwealth of Pennsylvania as reflected in its Constitution and statutes,
> and the judicial decisions interpreting its Constitution and statutes.

(ECF #1, Complaint, ¶128).

Certainly, the County could not interfere with the independence of the OPD if the filing

of the Brief was done as a citizen, and not as a part of the operations of the OPD.

Taking all of these factors into consideration, and applying a very "practical approach" as

urged by the Supreme Court, there is no question that Plaintiff was acting in her official capacity

as Deputy Chief Public Defender, and not as a private citizen, when she directed the OPD to file

the Brief. Thus, Plaintiff's actions are not protected by the First Amendment and her claim must

fail.

### b. *The Brief Was Prepared By the OPD Using Its Specialized Knowledge*

As the Third Circuit Court of Appeals in *Foraker* and *Gorum* held, speech based upon a

public employee's specialized knowledge and experience gained on the job is not speech

protected by the First Amendment. In *Gorum*, the court found that it was "Gorum's special

knowledge of, and experienced with" the school's disciplinary code that gave him the

opportunity to speak on the student's behalf; it was his position as faculty advisory to the

fraternity that allowed him to rescind the President's invitation to speak. *Gorum,* 561 F.3d at

186.

Here, the Brief was clearly written based upon the specialized knowledge and experience

of the OPD, gained during the representation of indigent defendants. As alleged in both the

Complaint and the Brief, the OPD used specific examples of cases handled by OPD attorneys to

9

support the arguments in the Brief.  (ECF #1, Complaint ¶¶ 35-38; Ex. A, Brief, pp 2-5) The

OPD's knowledge of these specific examples, and their experience with the cash bail system in

the Courts located in Montgomery County, could only have been acquired as a result of the

specialized knowledge and experience gained during the course and scope of employment at the

OPD. Thus, under *Foraker* and *Gorum*, the Brief cannot be considered "citizen speech," and is

not protected by the First Amendment.

     For all of these reasons, Counts I and II of Plaintiff's Complaint must be dismissed.

     **C.**     **Count III of Plaintiff's Complaint for Wrongful Discharge Should be Dismissed with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6).**

     Count III of Plaintiff's Complaint is entitled "Wrongful Discharge in Violation of Public

Policy."  Other than incorporating prior factual allegations, it is very short.  In asserts that by

firing Plaintiff allegedly in retaliation for the filing of the Brief, the County violated

Pennsylvania public policy.  (ECF #1, Complaint ¶¶127-128).  This Court should dismiss Count

III since the County has immunity for a claim of wrongful discharge, and the claim itself does

not state a viable claim for relief under Pennsylvania law.

     Plaintiff's counsel has stated that they will not oppose the County's Motion to Dismiss

this claim to the extent it seeks money damages because the County has immunity for such

claims.[1]  (*see* Certification of Raymond McGarry attached as Exhibit "C".)  However, Plaintiff

does intend to oppose this motion to the extent her Complaint seeks reinstatement. (*Id.*)

     **1.**     **Count III is Barred by the Pennsylvania Political Subdivision Tort Claims Act**

In response to the Supreme Court's abrogation of government immunity in *Ayala v.*

---

[1]     In light of the fact that Plaintiff agreed only that she would not oppose a motion to dismiss Count III to the extent Plaintiff seeks damages from Defendant, Defendant makes its substantive arguments regarding immunity below.

*Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), the Pennsylvania

Legislature enacted the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541-8564

("PTSCA").  *See Mascaro v. Youth Study Center,* 514 Pa. 351, 355, 523 A.2d 1118, 1120 (1987).

The Act "raises the shield of governmental immunity against any damages on account of any

injury to a person or property caused by any act of a local agency or employee thereof or any

other person, except as otherwise provided in 42 Pa.C.S. § 8542."  *Id.*

Since the Legislature intended through the enactment of PSTCA to provide governmental

immunities, exceptions to such immunity should be narrowly construed.  *Finn v. City of*

*Philadelphia,* 541 Pa. 596, 601, 664 A.2d 1342, 1344 (1995).  *See also Kiley by Kiley v. City of*

*Philadelphia,* 537 Pa. 502, 506, 645 A.2d 184, 185–86 (1994) ("Because of the clear intent to

insulate government from exposure to tort liability for any of its acts, exceptions carved out by

the Legislature from this general rule are strictly construed.").

Under PSTCA, local agencies are generally exempt from damages for any injuries caused

by the agency or its employees.  42 Pa.C.S. § 8541.  An injured party may recover in tort from a

municipality only if: (1) damages would be otherwise recoverable under common law or statute;

(2) the injury was caused by the negligent act of the local agency or an employee acting within

the scope of his official duties; and (3) the negligent act of the local agency falls within one of

eight enumerated categories.  *Id.*  The eight exceptions to local agency immunity are: (1) vehicle

liability; (2) care, custody or control of personal property; (3) care, custody, or control of real

property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7)

sidewalks; and (8) care, custody, or control of animals.  42 Pa.C.S. § 8542.

It is well-settled that a wrongful discharge claim does not fall within any of the

exceptions to immunity laid out in PSTCA § 8542.  *See, e.g., DeSimone v. Coatesville Area*

11

*School District*, 248 F.Supp.2d 387 (E.D. Pa. 2003) (*citing DeMuro v. Philadelphia Housing Authority*, No. 98-3137 1998 WL 962103 at *4 (E.D. Pa. Dec. 22, 1998) (the tort of wrongful discharge is not recognized as an exception to sovereign immunity in the PSTCA)); *Haiden v. Greene Cty. Career and Tech. Ctr.,* No. 08–1481, 2009 WL 2341922, at *2 (W.D.Pa. July 27, 2009); *Snavely v. Arnold,* No. 08–2165, 2009 WL 1743737, at *6, fn. 8 (M.D. Pa. June 18, 2009) (*citing Lancine v. Giles,* 132 Pa.Cmwlth. 255, 572 A.2d 827, 830 (Pa. Commw. Ct.  1990) (wrongful discharge is not one of the articulated exceptions to 42 Pa.C.S. § 8541-8542)); *Katzenmoyer v. City of Reading,* 158 F. Supp 2d 491, 502-03 (E.D. Pa. 2001) (dismissed claim for wrongful discharge as to the city because PSTCA bars claims for intentional torts); *McNichols v. Commonwealth, Dep't. Of Transportation,* 804 A.2d 1264, 1267 (Pa. Commw. Ct. 2002) (same); *Goldinger v. County of Butler*, No. 89-632, 1990 WL 309411 (Pa. Com. Pl. September 6, 1990) (the tort of wrongful discharge is not listed as an exception to immunity).

Even to the extent that Plaintiff seeks reinstatement of his employment via a request for injunctive relief, the County remains immune under PSTCA because such immunity applies both to damages claims and to claims for injunctive relief that require the government agency to take affirmative action.  *See Plaza v. Herbert, Rowland & Grubic, Inc.*, No. 344 C.D. 2016, 2017 WL 519827, at *3 (Pa. Commw. Ct. Jan. 30, 2017) (*citing Swift v. Department of Transportation*, 937 A.2d 1162, 1168 & n.7 (Pa. Cmwlth. 2007)) ("The General Assembly has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief"); *see also Rooney v. City of Phila.*, 623 F.Supp.2d 644 (E.D. Pa. 2009)  (city and SEPTA immune from suit for affirmative action by way of injunctive relief under PSTCA).

 Here, Count III asserts a common law claim for wrongful discharge in violation of Pennsylvania public policy.  The County is broadly immune from such claim under PSTCA, and

none of the Complaint's allegations take Count III outside of the immunity.

    **2.**    **Count III Does Not State a Valid Claim for Relief Since it Does Not Set Forth a Clearly Defined Public Policy.**

Plaintiff asserts that her termination violated Pennsylvania public policy. The Complaint does not, however, define with any clarity the public policy allegedly violated or the source of that public policy. It cites only to a generalized policy of independence of public defenders' offices within the Commonwealth "as reflected in its Constitution and statutes, and the judicial decisions interpreting its Constitution and statutes." (ECF #1, Complaint ¶128). The Complaint allegations do not state a valid claim for wrongful discharge in violation of public policy.

Pennsylvania is an at-will employment state. In general, "an employer may discharge an employee with or without cause, at pleasure, unless restrained by some contract." *Rothrock v. Rothrock Motor Sales, Inc.*, 810 A.2d 114, 117 (Pa. Super. 2002). As the Pennsylvania Supreme Court has stated, "[a]s a general proposition, the presumption of all non-contractual employment relations is that it is *at-will* and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 314, 750 A.2d 283, 287 (2000); *see also Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917, 918 (1988) (while there is no common law cause of action for termination of an at-will employment relationship, there are "the most limited of circumstances, where discharges of at-will employees threaten clear mandates of public policy."); *see also Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699, 701 (3d Cir. 1988) (A wrongful discharge claim under

13

Pennsylvania law sounds in tort and may be maintained "only when important and well recognized facets of public policy [are] at stake.") (citations omitted).

In order to state a claim for wrongful discharge based on the public policy exception to the at-will-employment doctrine, "the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision." *Hunger v. Grand Central Sanitation*, 670 A.2d 173, 175 (Pa. Super. 1996). Courts should find that a termination violates Commonwealth public policy "only in the clearest of cases." *Weaver v. Harpster,* 601 Pa. 488, 975 A.2d 555, 563 (2009). Accordingly, violations of public policy sufficient to state a claim for wrongful discharge have been found only in certain, very specific circumstances, *e.g.*, when an employee was terminated for applying for worker's compensation benefits, *Shick v. Shirey,* 716 A.2d 1231 (Pa. 1998); when an employee was terminated for refusing to submit to a polygraph test; *Kroen v. Bedway Security Agency*, 633 A.2d 628 (Pa. Super. 1993); when an employee was terminated for serving on a jury, *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. 1977); and when an employee was terminated for making a report mandated by federal law. *Field v. Phila. Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170, 1180 (1989).

In fact, courts have been reluctant to recognize a public policy sufficient to give rise to a wrongful discharge claim unless the discharge is a result of the employee's compliance with or refusal to violate the law. "Absent a violation of law, it is difficult for an at-will employee seeking recovery for wrongful discharge to point to a common law, legislative or constitutional principle from which a clear public policy exception to Pennsylvania's doctrine of at-will employment could be inferred." *Clark v. Modern Grp. Ltd.,* 9 F.3d 321, 328 (3d Cir. 1993).

The Third Circuit Court of Appeals has observed that the narrow exceptions to the at-will employment doctrine in Pennsylvania generally fall into three categories: "an employer (1) cannot require an employee to commit a crime; (2) cannot prevent an employee from complying with a statutorily imposed duty; and (3) cannot discharge an employee when specifically prohibited from doing so by statute." *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 111-12 (3d Cir. 2003) ("[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring") (*citing Hennessy v. Santiago,* 708 A.2d 1269, 1273 (Pa.Super. 1998)). *See also Shick v. Shirey,* 456 Pa.Super. 668, 691 A.2d 511, 513–14 (1997), *rev'd,* 552 Pa. 590, 716 A.2d 1231 (1998).

Here, the Complaint fails to set forth conduct by Plaintiff that falls within the recognized public policy exceptions. Plaintiff does not allege that she was compelled by the County to commit a crime. Nor does she cite to any specific statute prohibiting the County from terminating her employment. According to the Complaint, the conduct giving rise to Plaintiff's termination was the filing of the Brief, which was done on behalf of the OPD. (ECF #1, Complaint ¶¶31, 126). While that conduct was taken in her official capacity as a representative of the OPD, she does not allege, nor could she allege that the filing of the Brief by the OPD was required by any statutory or regulatory duty placed upon her.

Contrast this case with those where a plaintiff complains of being terminated for engaging in conduct compelled by statute or law. Even there, courts have not recognized a viable wrongful discharge claim when the specific statutes relied upon did not create an actual affirmative duty to engage in the conduct that gave rise to the termination. For example, in *Hennessy,* a counselor was terminated after reporting a patient's rape to the local district

15

attorney.  708 A.2d at 1272.  The plaintiff claimed that different Pennsylvania statutes, parts of the administrative code, and her national association's code of ethics imposed an affirmative duty upon her to report the rape of a client.  *Id.* at 1273-74.  The Superior Court declined to find a valid wrongful discharge claim existed because none of the statutes or codes cited actually imposed an affirmative obligation upon the plaintiff to report violations.  *Id.*  Contrasting the case before it with a statute that imposed an affirmative duty to report, the *Hennessy* Court cited a section titled, "Persons required to report suspected child abuse."  *Id.* at 1274 (*citing* 23 P.S. § 6311).  "As its title suggests, this section [explicitly] requires certain people, including mental health professionals, to report suspected child abuse."  *Id.*  That was not the case with the statute and codes cited by the *Hennessy* plaintiff, and thus, a wrongful discharge in violation of public policy claim did not exist.  *Id.*

Plaintiff fails to identify with any specificity the alleged Commonwealth policy regarding independence of public defenders' offices and how her termination violated such policy.  Simply stated, Plaintiff has not alleged any Commonwealth public policy sufficient to give rise to a valid wrongful discharge claim, certainly not any defined policy that is extremely clear with virtual unanimity of opinion in regard to it.  *Shick,* 716 A.2d at 1235–36 (quotation omitted).  Thus, Plaintiff's claim should be dismissed.

### D.  Plaintiff's Request To Be Reinstated With a Guaranty that She May Operate Independently Must Be Stricken

Plaintiff's Complaint seeks an order requiring "Montgomery County to reinstate Hudson to her prior position and to guarantee that she may operate independently in that position."  The Court should strike this requested relief from the Complaint as Plaintiff was an employee at will, not entitled to any guarantees on the terms of her employment, especially one that vaguely would require the County to guarantee that she may operate independently in that position.

16

Under the Public Defender Act, 16 P.S. §9960.1 *et seq,* the County Board of Commissioners have the right to appoint the Chief Public Defender.  Under that same Act, the right of the Chief Public Defender to hire other attorneys in the office derives from the Board of Commissioners. The Act does not provide for the right to any guarantees of the terms of employment - and it certainly does not guarantee that the County would have no control over the OPD.  In fact, the opposite must be inferred since it is the Board of Commissioners that have the right to appoint the Chief Public Defender. Thus, under the very Act that establishes the public defender, the County has the right to control the operations of the OPD.

Moreover, under Pennsylvania law, Plaintiff was an at-will employee of the County.  As discussed in Section D(1)(c) of this Memorandum *supra*, "an employer may discharge an employee **with or without cause**, at pleasure, unless restrained by some contract." *Rothrock v. Rothrock Motor Sales, Inc.*, 810 A.2d 114, 117 (Pa. Super. 2002).  There is no legal authority for abrogating the provisions of the Public Defender Act and imposing any guarantees on the terms of Plaintiff's employment. As such, the requested relief is inappropriate and must be stricken.

### E.      The Court Should Refrain From Exercising its Supplemental Jurisdiction.

Should the Court dismiss Counts I and II of the Complaint as a matter of law, it should refrain from exercising its supplemental jurisdiction over the remaining state claim.  When the district court has dismissed all claims over which it has original jurisdiction, the district court has the express authority to decline to exercise supplemental jurisdiction over any related state law claims. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cty., Pa.,* 983 F.2d 1277, 1284 (3d Cir. 1993) ("a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction"); *See also Greenwood Partners, L.P. v. Cimnet, Inc.,* 2003 WL 22238981, at *4 (E.D. Pa. Sept. 26, 2003). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by

17

procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966).  Here, Plaintiff's Section 1983 claim was the sole basis of the Court's original jurisdiction. For reasons already discussed, that claim fails as a matter of law. As a result, the Court is well within its right to refuse to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  This is particularly called for when the claim involves a matter of state public policy such as Count III, and where the action is in its early procedural stages.  *Cf Growth Horizons, supra,* 983 F.2d at 1284-85 (no dismissal of state claims where trial on merits had already occurred).  As such, the Court should dismiss Count III under Rule 12(b)(1) for lack of subject matter jurisdiction.  *See Polite v. Rendell*, 2010 WL 1254334, at *4–5 (E.D. Pa. Apr. 1, 2010).

## III.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant Montgomery County respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety and for such other relief the Court deems just and appropriate.

Respectfully submitted,

Date:  May 18, 2020

*/s/ Raymond McGarry*
Mary Kay Brown, Esquire
Raymond McGarry, Esquire
Jami B. Nimeroff, Esquire
Brown McGarry Nimeroff LLC
2 Penn Center, Suite 610
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
T:  (267) 861-5330

*Attorneys for Defendant*